UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KENNETH GRAHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:12-cv-00863-SPM |
| | ) |
| CAROLYN W. COLVIN,[1] | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of Social Security, denying the application of Plaintiff Kenneth Graham for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). (Doc. 19).

**FACTUAL BACKROUND AND PROCEDURAL HISTORY**

Plaintiff is a 39-year-old former tree trimmer who filed his disability applications on June 15, 2009. Plaintiff claims he became disabled beginning June 15, 2008, due to "crushed discs" in his lower back, bone spurs in his neck, knots in his shoulder, neck, and down his back, and headaches. (Tr. 183). The Commissioner denied Plaintiff's application initially, and

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should therefore be substituted for Michael J. Astrue as the defendant in this case.

1

Plaintiff filed his written request for a hearing before an administrative law judge ("ALJ"). On November 15, 2010, Plaintiff appeared and testified at a hearing before an ALJ.

On November 30, 2010, the ALJ issued his written decision in which he concluded that (i) Plaintiff had not engaged in substantial gainful activity since June 15, 2008; (ii) Plaintiff has severe impairments including obesity, degenerative disc disease of the lumbosacral spine and cervical spine, status-post bilateral carpal tunnel syndrome, status-post left forearm abscess, and hypertension and sleep apnea controlled by medication; (iii) Plaintiff does not suffer from an impairment or combination of impairments of a severity that meets or medically equals the required severity of a listing; (iv) Plaintiff has the residual functional capacity ("RFC") to perform a full range of light work, and there are no medically credible nonexertional limitations that would preclude Plaintiff from doing light work; (v) Plaintiff is unable to perform past relevant work; and (vi) given Plaintiff's age, education, work experience, and capacity to perform light work, the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "Grids"), directed a finding of "not disabled"; and  (vii) Plaintiff was not under a disability at any time through the date of the ALJ's decision.  (Tr. 73-74).  The ALJ did not use the testimony of a vocational expert in making his findings.

Plaintiff requested Appeals Council Review of the ALJ's decision and submitted additional records, including records from Plaintiff's treating doctor and records from an orthopedist who began treating Plaintiff after the ALJ's decision.  The Appeals Council reviewed the additional records and incorporated the records from the treating doctor into the medical evidence of record.  However, the Appeals Council concluded that the other records were not pertinent to the decision about whether Plaintiff was disabled on or before November 30, 2010, and thus did not make those records part of the medical evidence of record.  The Appeals

2

Council denied Plaintiff's request for review. (Tr. 1-7). Thus, the decision of the ALJ stands as the final decision of the Commissioner.

Plaintiff filed the instant action and, on June 21, 2013, I held a hearing to clarify the issues raised in the parties' respective briefs. In essence, Plaintiff argues that the ALJ's determination that Plaintiff had no nonexertional limitations was not supported by substantial evidence and, thus, his reliance on the Medical-Vocational Guidelines was reversible error. Plaintiff contends that in determining there were no nonexertional limitations, among other things, the ALJ failed to properly weigh the medical opinion evidence, particularly the opinion of Plaintiff's treating physician. Plaintiff further contends that the ALJ improperly discounted Plaintiff's subjective complaints, including pain. Plaintiff also argues that the Commissioner failed to sufficiently consider new evidence directly contradicting the ALJ's findings and failed to adequately develop the record by ordering appropriate consultative examinations.

## STANDARD OF JUDICIAL REVIEW

The court's role in reviewing the Commissioner's decision is to determine whether the decision "'complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole.'" *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 518 F.3d 979, 981 (8th Cir. 2008)). "Substantial evidence is 'less than preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012) (quoting *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009)). In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Id.* However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations

3

regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

Having reviewed and considered the administrative record in its entirety, including the briefs of the Plaintiff and the Commissioner, the transcript of the hearing held before the Administrative Law Judge, the written opinion of the ALJ and arguments by counsel, I find that the decision denying benefits was not supported by substantial evidence. For the reasons stated below, I will reverse the Commissioner's decision to deny Plaintiff's application for benefits and remand this case for further proceedings.

## **DISCUSSION**

To establish a disability claim, the claimant bears the initial burden to show that he is unable to perform his past relevant work. *See Beckley v. Apfel*, 152 F.3d 1056, 1059 (8th Cir. 1998); *Reed v. Sullivan,* 988 F.2d 812, 815 (8th Cir. 1993). If the claimant meets that initial burden, the burden of proof then shifts to the Commissioner to demonstrate that the claimant retains the RFC to perform a significant number of other jobs in the national economy that are consistent with the claimant's impairments and with vocational factors such as age, education, and work experience. *See id.; see also Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005); 20 C.F.R. §§ 404.1560(c), 416.960(c). In this case, the ALJ found that Plaintiff met his initial burden; thus, the dispositive question is whether the Commissioner met her burden of

4

establishing that Plaintiff retained the RFC to perform a significant number of other jobs in the national economy.

If the ALJ finds that the claimant has only exertional limitations, the Commissioner may meet this burden by relying on the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "Grids"). *Robinson v. Sullivan*, 956 F.2d 836, 841 (8th Cir. 1992). However, if the claimant has nonexertional impairments, the ALJ is permitted to rely on the Grids rather than the testimony of a vocational expert only if "the ALJ finds, and the record supports the finding, that the nonexertional impairment does not diminish the claimant's residual functional capacity to perform the full range of activities listed in the [Grids].'" *Lucy v. Chater*, 113 F.3d 905, 908 (8th Cir. 1997) (quoting *Thompson v. Bowen*, 850 F.2d 346, 349 (8th Cir. 1988)); *see also Evans v. Chater*, 84 F.3d 1054, 1056 (8th Cir. 1996) ("The [Grids] can be used to determine disability, provided that the nonexertional impairments do not significantly diminish the claimant's residual capacity to perform the activities listed in them."). Stated another way, "if a claimant's ability to perform the full range of work in a particular category is limited by a nonexertional impairment, the ALJ cannot rely exclusively on the [Grids] to determine disability but must consider vocational expert testimony." *Beckley*, 152 F.3d at 1059.

Plaintiff contends the administrative record in this case is rife with evidence that he had nonexertional limitations due to back pain and neck pain and bilateral carpal tunnel syndrome, among other things.[2] Plaintiff posits that the ALJ committed reversible error by failing to include those limitations in the RFC and by subsequently relying on the Grids.

---

[2] Plaintiff also contends he had nonexertional limitations resulting from other impairments such as sleep apnea and depression. However, the ALJ's decision to exclude nonexertional limitations related to depression and sleep apnea is supported by substantial evidence. For example, as the Commissioner pointed out, with one or two very minor exceptions, the medical records that were before the ALJ reflect that plaintiff consistently denied symptoms of

> **A. The ALJ's Conclusion That Plaintiff Had No Nonexertional Limitations From Neck and Back Pain Is Not Supported by Substantial Evidence.**

The Eighth Circuit has recognized pain as a nonexertional impairment that can preclude the use of the Grids in determining disability. *See id.* In support of his argument that the ALJ erred by failing to include nonexertional limitations from neck and back pain in the RFC, Plaintiff cited several medical records documenting his long-term treatment for neck and back pain. He also cited an opinion by his treating physician, Dr. Stephanie Moniz, that he had "permanently disabling" cervical spine pain. Although the ALJ accepted Dr. Moniz as a treating physician, he rejected her opinion.

The Eighth Circuit has repeatedly held that "[a] treating physician's opinion is given controlling weight if it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [a claimant's] case record.'" *Tilley v. Astrue*, 580 F.3d 675, 679 (8th Cir. 2009) (quoting 20 C.F.R. § 404.1527(d)(2)). On the other hand, "[w]hen a treating physician's opinions are inconsistent or contrary to the medical evidence as a whole, they are entitled to less weight." *Halverson v. Astrue*, 600 F.3d 922, 929-30 (8th Cir. 2010) (internal quotation marks omitted). "'When an ALJ discounts a treating physician's opinion, he should give good reasons for doing so.'" *Martise v. Astrue*, 641 F.3d 909, 925 (8th Cir. 2011) (quoting *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007)).

The opinion at issue was expressed in a check-the-box type work status report form dated September 25, 2009, indicating that Plaintiff had a cervical disc condition (herniated disc or cervical herniated nucleus pulposus), that is "permanently disabling." (Tr. 383). Although the

---

depression. In addition, plaintiff testified at the hearing that he was "doing much better" with his sleep apnea.

ALJ accepted Dr. Moniz as a treating physician, he rejected her opinion that Plaintiff had a disabling cervical herniated disc condition, stating:

> The undersigned does not find the solicited cursory check-off statement in [sic] by Dr. Moniz (Exhibit B12F) to be proof of disability in this case.  Nothing in her actual treatment records, not to mention the records of Dr. Gelberman, Dr. Sippo and others, suggests any impairment or combination of impairments that is markedly severe in terms of functional restriction, and that cannot be controlled by medication or other simple conservative treatment measures.  (Tr. 71).

Although, as the Commissioner argues, Dr. Moniz's opinion is not conclusive on the issue of disability, her opinion that Plaintiff's neck condition is "disabling" provides a medical basis for Plaintiff's claim of chronic and severe pain.  *See Ross v. Apfel*, 218 F.3d 844, 849 (8th Cir. 2000).  The ALJ's stated reasons for discounting Dr. Moniz's opinion are not supported by substantial evidence in the record.  The records reflect that Plaintiff used various modalities for pain over a long period of time.  For instance, beginning as early as 2002, Plaintiff sought treatments for neck and back pain, including injections.  In 2008 and 2009, before he began seeing Dr. Moniz, Plaintiff was treated for neck or cervical spine pain by a different doctor, Dr. Steele.  The records further show that Plaintiff was consistently treated for his ongoing neck and back pain with strong pain medications and muscle relaxants such as Norco, Oxycodone, and Soma.  There is no evidence here that the Plaintiff failed to take those medications or opted to manage his symptoms with more conservative measures such as over-the-counter pain medication.

Although X-rays and MRIs showed mild or normal changes in Plaintiff's back, musculoskeletal examinations performed by Dr. Moniz consistently showed Plaintiff had decreased range of motion in his neck and back and pain on range of motion in his neck and back.  The records also suggest Plaintiff's pain was constant and chronic; as of March 2011, he

continued to complain of "constant, severe and throbbing" pain, with only "some relief" from the narcotic pain medication.

Notwithstanding the Commissioner's arguments to the contrary, Dr. Moniz's opinion is not in conflict with the treatment records of orthopedist Kevin Rutz, who examined Plaintiff in September 2009. In examining Plaintiff, like Dr. Moniz, Dr. Rutz found that Plaintiff had decreased range of motion and pain on range of motion. Based on his review of available film of Plaintiff's lumbar and cervical spine, Dr. Rutz found that Plaintiff's **lumbar** spine was normal and that "there were no indications for surgical intervention." However, after reviewing available films, Dr. Rutz stated that with respect to Plaintiff's **cervical** spine, he would need to obtain an MRI to see if there was "any neurologic impingement." At the hearing before the ALJ, Plaintiff testified that he was unable to obtain the MRI of his cervical spine because his insurance company was "refusing to do it." Dr. Rutz ultimately diagnosed Plaintiff with chronic low back pain and chronic neck pain. That diagnosis is not in conflict with Dr. Moniz's opinion regarding the severity of Plaintiff's cervical spine condition.

Dr. Moniz's opinion is also consistent with the findings of Nurse Practitioner Patricia Allen, who examined Plaintiff in December of 2009 for the purposes of a disability physical. On examination, Nurse Allen (whose findings were also rejected by the ALJ), found that Plaintiff had decreased range of motion to his neck and lower back. Nurse Allen concluded that Plaintiff was disabled as a result of his neck and back pain in combination with other conditions.[3]

---

[3] The Court acknowledges that, as a nurse practitioner, Nurse Allen is not an "acceptable medical source" and is thus not considered a "treating source" whose opinion is entitled to controlling weight. 20 C.F.R. §§ 404.1513(a) & (d)(1), 416.913(a) & (d)(1); Social Security Ruling 06-03p ("SSR 06-03p"), 2006 WL 2329939, at *2 (Aug. 9, 2006). However, she is an "other source" whose opinions "may provide insight into the severity of [the individual's] impairment(s) and how it affects the individual's ability to function." SSR-06-02p, 2006 WL 2329939, at *2; *see*

8

The ALJ failed to specify how Dr. Moniz's opinion that Plaintiff had a disabling herniated disc condition in his cervical spine conflicted with the treatment records of other treating doctors such Dr. Sippo and Dr. Gelberman.  Dr. Sippo treated Plaintiff exclusively for excision of an abscess from a spider bite.  His records do not reflect musculoskeletal examinations or other procedures that would impact Dr. Moniz's findings.  Dr. Gelberman treated Plaintiff for bilateral carpal tunnel syndrome, and his records do not present any plausible inconsistencies with respect to Dr. Moniz's findings.  To the extent that treatment notes from one-time visits with physicians such as Dr. Guy, who saw Plaintiff for sinusitis, conflict with Dr. Moniz's findings on her many musculoskeletal examinations, those records also fail to rise to the level of substantial evidence of conflicting opinions between treating doctors.

The ALJ also failed to explain how, if at all, Plaintiff's own statements and testimony about his pain symptoms conflicted with Dr. Moniz's opinion or treatment notes.  As the ALJ's decision acknowledged, Plaintiff's "main allegation was of chronic back and neck pain, associated with neck stiffness and daily headaches, and sharp, stabbing, shooting pain down both legs."  The ALJ further acknowledged Plaintiff's testimony that "prescribed medications he took made him feel tired and jittery" and that he "could not stand or sit more than 15-20 minutes or walk or drive more than a half block at a time, climb steps without a handrail, bend or stoop easily, or lift or carry more than five pounds."  The ALJ noted Plaintiff helps his wife with grocery shopping but no other household chores.  He could feed, dress and bathe himself, but he leaned against a wall while showering and spent 85% of a typical day resting in bed or in a recliner. (Tr. 68).

---

*also* 20 C.F.R. §§ 404.1513(d)(1), 416.913(d); *Shontos v. Barnhart*, 328 F.3d 418, 426 (8th Cir. 2003).

9

At bottom, this is not a case in which different treating doctors have offered varied opinions. *See Hamilton v. Astrue,* 518 F.3d 607, 611-12 (8th Cir. 2008) (treating doctor's opinion conflicted with another doctor's treatment notes); *Casey v. Astrue,* 503 F.3d 687, 692–93 (8th Cir. 2007) (treating rheumatologist's opinion inconsistent with other doctors' treatment notes). Nor is this a case in which the doctor's findings are in conflict with Plaintiff's daily activities as reported by Plaintiff or any third parties. Rather, Dr. Moniz's opinion about the severity of Plaintiff's condition causing neck pain is consistent with, or at least not in conflict with, her own treatment notes, the treatment records of the specialists she referred Plaintiff to, and Plaintiff's testimony about his symptoms. For these reasons, the ALJ's decision to reject Dr. Moniz's opinion is not supported by substantial evidence.

The ALJ apparently based his finding that Plaintiff had no "credible, medically-established chronic nonexertional impairments" on his decision to disregard the opinions Dr. Moniz and Nurse Allen. As the record currently stands, I am unable to determine whether the ALJ would have reached the same conclusion if he had afforded proper weight to Dr. Moniz's opinion. Thus, remand is required.

### B. The ALJ's Conclusion That Plaintiff Had No Nonexertional Limitations From Carpal Tunnel Syndrome Is Not Supported by Substantial Evidence.

In addition to claims of chronic neck and back pain, Plaintiff presented evidence that he was diagnosed with bilateral carpal tunnel syndrome in November 2009. A publication from the National Institutes of Health (NIH)[4] defines carpal tunnel syndrome as what occurs

> when the median nerve, which runs from the forearm into the palm of the hand, becomes pressed or squeezed at the wrist. . . . The result may be pain, weakness, or numbness in the hand and wrist, radiating up the arm . . . decreased grip strength [making it] difficult to form a fist, grasp small objects, or perform other manual tasks.

---

[4] *See* http://www.ninds.nih.gov/disorders/carpal-tunnel.

10

Carpal tunnel release is a common surgical procedure used to treat carpal tunnel syndrome.  The NIH publication further provides:

> Although symptoms may be relieved immediately after surgery, full recovery from carpal tunnel surgery can take months.  Some patients may have infection, nerve damage, stiffness, and pain at the scar.  Occasionally the wrist loses strength because the carpal ligament is cut. . . .  Some patients may need to adjust job duties or even change jobs after recovery from surgery.

In the instant case, when he applied for benefits, Plaintiff indicated that he had trouble using his hands.  When he was diagnosed with carpal tunnel syndrome in November 2009, Plaintiff complained of hand numbness of three to four years duration.  On physical examination, the orthopedic surgeon, Dr. Gelberman, found "decreased dexterity in both hands."  At the hearing before the ALJ in November 2010, Plaintiff testified that, despite having carpal tunnel release surgery in February 2010, he continues to have pain in his hands, loses the feeling in his fingers, and drops things.  Medical records reflect that Plaintiff complained of numbness in his arms at a visit with his treating doctor on November 30, 2010.

The ALJ did not explicitly examine whether Plaintiff's status post-bilateral carpal tunnel release interfered with his ability to work.  Rather, he concluded that there was no evidence of long-term limitations from carpal tunnel syndrome and "good relief from the release surgery in February 2010."  (Tr. 71).  The Commissioner argues the ALJ's decision is supported by treatment notes from a post-surgery visit one week after the surgery (when his sutures were removed) and treatment notes from a visit with Plaintiff's treating doctor a couple of weeks later at which Plaintiff indicated his hands were "doing better."  When the entire record is considered, the two isolated notes in the medical records do not constitute substantial evidence in support of the ALJ's RFC determination.

11

The Commissioner also argues that the ALJ's decision is supported by the lack of documented complaints by Plaintiff in the medical records. While the absence of documented complaints by Plaintiff may lend support to a credibility determination by the ALJ regarding the severity of Plaintiff's condition, a conclusion regarding credibility is not the equivalent of proving by medical evidence that Plaintiff has the RFC to perform a full range of light work with no nonexertional limitations. *See Estabrook v. Apfel,* 14 F. Supp. 2d 1115, 1122 (S.D. Iowa 1998); *Soth v. Shalala*, 827 F. Supp. 1415, 1417 (S.D. Iowa 1993). Because the ALJ did not seek further evidence of what impact, if any, Plaintiff's condition following carpal tunnel release might have had on his ability to perform a full range of light work, there is a void in the record that precludes a complete review of the ALJ's RFC finding.

It is well settled that "the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004) (citing *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000); *Landess v. Weinberger*, 490 F.2d 1187, 1188 (8th Cir. 1974)). The ALJ's duty extends even to cases where the claimant is represented by an attorney at the administrative hearing. *Id.* (citing *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983). "The ALJ possesses no interest in denying benefits and must act neutrally in developing the record." *Id.* (citing *Richardson v. Perales*, 402 U.S. 389, 410, 91 S. Ct. 1420, 28 L.Ed.2d 842 (1971); *Battles v. Shalala*, 35 F.3d 43, 44 (8th Cir. 1994)).

An assessment of Plaintiff's ability to use his arms and hands following the carpal tunnel release surgery is important particularly because the ALJ has determined that Plaintiff is capable of performing a full range of "light work" and because the Commissioner has the burden of proving that Plaintiff has retained the RFC to perform a significant number of other jobs in the

national economy. Under Social Security rules, light work entails the "use of arms and hands to grasp and to hold and turn objects." SSR 83-10, 1983 WL 31251, at *6 (1983). Under SSR 83-10, the ALJ's determination that plaintiff has the RFC to perform a full range of light work establishes the presence of an occupational base that includes a full range of the unskilled occupations existing at the exertional level of light work. *Id.* at *3 (1983). In the absence of additional limitations, the "[occupational] base established by [the] RFC also ordinarily includes all those occupations at any lower exertional level(s)." *Id. See also* 20 C.F.R. §§ 404.1567(b), 416.967(b)) ("If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.").

Here, because the ALJ found no additional limitations, the occupational base established by the RFC includes all occupations at both the exertional level of "light work" and the lower exertional level of "sedentary work." Under SSR 96-9p, sedentary work involves activities "classified as 'nonexertional,' such as capacities for seeing [and] manipulation . . . ." SSR 96-9p, 1996 WL 374185, at *3 (July 2, 1996). In addition, SSR 96-9p provides:

> Most unskilled sedentary jobs require good use of both hands and the fingers; i.e., bilateral manual dexterity. Fine movements of small objects require use of the fingers, e.g., to pick or pinch. Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions.
>
> Any *significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base.

*Id.* at *8.

When the absence of any post-surgery/post-recovery examination of plaintiff's hands and arms, is taken together with evidence in the record that plaintiff had a loss of dexterity in both hands prior to the surgery and plaintiff continued to have problems with his hands and fingers

after the surgery, it becomes apparent that there is a void in the record regarding plaintiff's current ability to use his arms and hands to hold, grasp and turn objects as well as plaintiff's ability to use his hands and fingers to pick or pinch. As a result, as the record currently stands, the ALJ's conclusion that Plaintiff had no credible nonexertional limitations from carpal tunnel syndrome is not supported by substantial evidence.

> **C. The ALJ's Conclusion That Plaintiff Has No Medically Credible Nonexertional Limitations or Impairments That Would Preclude Him From a Full Range of Light Work Is Not Supported by Substantial Evidence.**

In *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001), the Eighth Circuit held that "although a claimant's RFC is determined at step four of the sequential evaluation process, where the burden of proof rests on the claimant, the ALJ bears the primary responsibility for making the RFC determination and for ensuring that there is "some medical evidence" regarding the claimant's "ability to function in the workplace" that supports the RFC determination. Therefore, "the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace." *Id.*

In this case, it is not at all clear what medical evidence the RFC finding is predicated upon. This is true particularly in light of the opinion of Plaintiff's treating physician, which was rejected by the ALJ, and in light of substantial evidence in the record that Plaintiff was treated for chronic, ongoing, severe back and neck pain over an extended period of time. The ALJ failed to cite any medical source or other authority to support his statement that Plaintiff "does not have most of the signs typically associated with chronic, severe musculoskeletal pain such as muscle atrophy, persistent or frequently recurring muscle spasms, obvious or consistently reproducible neurological deficits . . . or other signs of nerve root impingement, significantly abnormal x-rays or other diagnostic tests, positive straight leg raising, persistent inflammatory signs . . .or bowel

14

or bladder dysfunction." Not only does this statement conflict with the diagnoses of chronic pain made by Plaintiff's treating doctor and the examining specialist, Dr. Rutz, it also suggests that the ALJ drew his own medical inferences from the medical records, in contravention of Eighth Circuit law. *See Lauer,* 245 F.3d at 703; *see also Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir. 2000) ("An administrative law judge may not draw upon his own inferences from medical reports.") (quotation marks omitted).

The only medical opinion evidence of record that could potentially support the ALJ's finding that Plaintiff had no nonexertional limitations that would preclude him from doing a full range of light work is a September 18, 2009, Residual Functional Capacity Assessment by State Agency non-examining medical consultant, Dr. Mel Moore, ("RFC Assessment"). Notwithstanding arguments by the Commissioner to the contrary, Dr. Moore's RFC Assessment does not constitute substantial evidence for several reasons.

First, Dr. Moore is a nonexamining consultant. "The opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole." *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003). Although the opinions of nonexamining sources may be considered, they are generally given less weight than those of examining sources. *Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir. 2010).

Second, it does not appear from the decision that the ALJ actually relied on Dr. Moore's opinion in reaching his conclusion. Indeed, the ALJ's decision makes only one reference to Dr. Moore's RFC Assessment, and that reference is a rejection of nonexertional limitations found by Dr. Moore. More specifically, the ALJ rejected Dr. Moore's assessment that Plaintiff had certain environmental limitations and manipulative limitations, including the ability to reach in all

15

directions including overhead. The ALJ specified his reasons for rejecting environmental limitations but failed to articulate his reasons for rejecting the manipulative limitations found by Dr. Moore.

Finally, Dr. Moore's RFC Assessment was completed before Plaintiff's treating doctors made diagnoses that may have been critical to the determination of Plaintiff's RFC. For instance, Dr. Moore's assessment was performed before Dr. Moniz diagnosed Plaintiff with chronic pain syndrome and expressed her opinion that Plaintiff's neck pain was "disabling." In addition, well after Dr. Moore's RFC assessment, Plaintiff was diagnosed with other conditions such as carpal tunnel syndrome. Because Dr. Moore's RFC Assessment predates many significant developments and diagnoses in Plaintiff's treatment history, it cannot constitute substantial evidence in support of the ALJ's RFC determination.

## **CONCLUSION**

In sum, the ALJ's decision denying benefits is not based on substantial evidence on the record as a whole. It is not at all clear from the ALJ's decision what medical evidence supports his determination that Plaintiff had the RFC to perform a full range of light work with no nonexertional limitations. In addition, in determining Plaintiff's RFC, the ALJ improperly considered the opinion of Plaintiff's treating physician; failed to adequately develop the record with respect to Plaintiff's ability to work following carpal tunnel release; and may have erroneously drawn his own medical inferences from the medical records. Accordingly, and out of abundant deference to the ALJ, the Court will remand the case for further administrative proceedings.

On remand, the Commissioner shall permit Plaintiff to augment the record with the inclusion of any additional medical evidence he wishes to submit. The Commissioner may also

wish to further develop the record by requesting information from a treating physician or obtaining a consultative medical evaluation from a medical source examiner with respect to the severity of Plaintiff's impairments and his projected work-related capabilities and limitations, including any manipulative or pain-related limitations.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **REVERSED** and this cause **REMANDED** to the Commissioner for further proceedings consistent with this Memorandum Opinion.

A separate Judgment shall accompany this Memorandum Opinion.

/s/Shirley Padmore Mensah
SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of July, 2013.